2619 McGarry & McGarry v. Bankruptcy Management Solutions, Inc. Good morning, Your Honor. May it please the Court? I'm Bill Dunnegan for the appellant McGarry & McGarry. We're moving to antitrust standing. We're here to ask the Court to rule that a creditor in a Chapter 7 bankruptcy case has standing to assert antitrust claims against a price fixer who has overcharged the estate when the estate cannot bring that antitrust claim. Before we get to the question of standing, I think we have to address subject matter jurisdiction here. The most that McGarry can collect is roughly $1,500 in treble damages plus reasonable attorney's fees. Is that right? That is correct, Your Honor. Okay. Now, is it reasonable to spend $73,500 collecting $1,500? I know that McGarry has spent much more than that already trying to make this case, but can you cite some cases that allow a party to collect attorney's fees that equal 47 times the amount recovered? I'm really interested. I'm particularly interested in Illinois antitrust. Okay. Your Honor, I can't cite you a case which says that, but I can tell you based upon general experience that in most types of class action situations, the amount in dispute is de minimis. It's small. It's small. I won't say de minimis, but if you look at it in the aggregate, it is significant. Now, here we are dealing with an issue, or actually a price-fixing practice, that is probably taking tens of millions of dollars a year out of the Chapter 7 bankruptcy system. When you put that together with the fact that this conspiracy was not visible to the public eye, there was FOIA request after FOIA request in order to make sure that the amounts that are involved substantially exceed $75,000 in order to bring this case in the first instance. Now, the Illinois Antitrust Act allows indirect, as well as direct purchasers, to bring a claim, and McGarry's admitted that it is not a purchaser at all. That's correct. Much less an indirect purchaser. That is correct. Why isn't that the end of it? Okay. Here's the analysis. The Illinois Antitrust Act, like the Sherman and the Clayton Act, provides that anyone who has been damaged by reason of a violation has a claim. Now, there are two, in the federal area, there are two limitations on that. The first is the standards set forth in Associated General Contractors, which is a group of six factors that deal with how close the individual is to the intended ground for analysis under federal law, is the Illinois BRIC standard. And that says that if you are a direct purchaser, you have a claim. If you are an indirect purchaser, you do not have a claim. Illinois has an Illinois BRIC Repealer Act, which says you have a claim under Illinois law if you are an indirect purchaser. However, the Illinois BRIC analysis does not apply to what we're dealing with here because we are under the Associated General Contractors standard and not an Illinois BRIC standard because we are not a purchaser. You know, McGarry asserted that the wrong can't be righted unless it's allowed to sue, but the trustee could have sued. I mean, you know, it simply declined to do so and McGarry could have objected to the fee in the bankruptcy as unreasonable. In fact, any creditor to this fee in any bankruptcy where the trustee uses these services. So why isn't that sufficient to address this alleged wrong? There's two issues there which Your Honor addressed. One was the objection of the bankruptcy and the other was the ability of the trustee to do it. Now, when the issue back in April of 2014 was presented that there were 541 charges on this bankruptcy, final trustees report, no one had the slightest idea that there was a price fixing scheme going on. McGarry only learned of the price fixing scheme about two years later in 2016, the middle of 2016, and decided to take some sort of action at that point. So I don't think that it would be reasonable to say that, well, the fact that you could take what you know now through a lot of FOIA requests and actually a lot of litigation as well and say, well, you should have known it in 20 days' notice after you were given a directive that there's going to be a $541 charge. Now, the second objection that Your Honor raised was why isn't the trustee doing it? Now, there's a couple of answers to that one. The first is that we moved to reopen the bankruptcy case after the trustee said, no, I don't want to reopen the bankruptcy case. And the bankruptcy judge essentially said, yeah, we know you know about the conspiracy now, but it's too late to reopen the bankruptcy case because there are issues of finality here. So most likely, and I think this is highly probable, that no one would have been able to open up the bankruptcy case at that point because the bankruptcy judge was saying that too much time had simply expired. We took that to the district court, and the district court agreed with what the bankruptcy judge had done, or at least it said the bankruptcy judge had not abused her discretion. So if you put those together... Speaking about the bankruptcy court, I saw from the reply brief that the district court confirmed the bankruptcy court's refusal to reopen the bankruptcy. Yes, that's correct. And allow derivative standing. Has McGarry appealed that decision to this court? We are not appealing that decision to this court because we're dealing with a discretionary decision of the bankruptcy court. We are dealing with a discretionary decision of the district judge. How does all that factor in here? I think it makes our point stronger because what we're saying at this point is this estate cannot bring that claim because what the bankruptcy judge largely found was too much time had elapsed. And what we're saying is we only discovered the fraud, not the fraud, but the price fixing about two years after the bankruptcy closed. BMS was never a party to the bankruptcy. I'm not sure I understand that, but okay. I want to make sure you do understand it, Your Honor. Because chronology of events. April of 2014. Trustee submits final report saying $541 had been charged against the estate for bank and technology fee. 20 days expired. No one objects. No one knows or has any reason to believe at that point that there was a price fixing scheme involving these bankruptcy services. At that point, time passes. McGarry, two years later, learns that there was a price fixing scheme. The evidence is laid out in front of McGarry as the result of a bunch of Freedom of Information Act requests. McGarry files suit. District Court says no standing because the trustee could do it. We didn't appeal that. That could be right. Then we brought an action to try to open up the bankruptcy and the bankruptcy court just says, hey, two years. You tried in this district court case. It's too late. So what BMS has actually accomplished is they have slid it under the radar to effectuate a price fixing scheme. They've allowed time to pass. Still continuing to cover up the scheme. And then they've gotten the courts to say it's too late for the estate to do it. What we're here to say is it appears it is too late for the estate to do it because that's what the bankruptcy court said. That's what the district court affirmed. But there's a four year statute of limitations and we're within it. We should have standing because there is no more efficient antitrust enforcer than we are. Because if the estate can't do it, we're the only game in town. Can I just make sure I understand your response to Judge Robner at the outset when she asked you about subject matter jurisdiction? The amount in controversy is coming from what? The amount in controversy comes from the amount in dispute at the time we filed the complaint in Illinois State Court which represents the amount of damages and because Illinois allows the recovery of attorney's fees the amount of attorney's fees that were genuinely disputed at that period of time. In the district court we offered her and handed up a spreadsheet which showed that we Some of that was work that was done in the prior district court case because the issues are virtually identical. So the district court was persuaded that there was more than $75,000 in dispute. Hi, Mr. Herman. Good morning, Your Honors. I'm Jonathan Herman from Dorsey & Whitney and I represent the Appley Bankruptcy Management Solutions. Let me address your questions and concerns about subject matter jurisdiction. We had quite a hearing before Judge Lefkoe on that subject. I submitted a pretty lengthy brief that cited, among other things, four decisions from Judge Easterbrook and those are Rising Moore, Back Doctors, Brill, and Meridian. And those four basically say, first, the burden is on me as the person who chose to remove the case to find out what the plaintiff hopes to get out of the litigation. That's the standard. So I asked the plaintiff's lawyer, what did he hope to get out of this? And he said, I'm suing for hundreds of thousands of dollars. Several hundred thousand dollars in attorney's fees that related to the first case and I needed to do that work in order to pursue this second case. So I thought to myself, well that doesn't sound quite right, but I'll accept it for the purpose of removing the case. What Judge Easterbrook said was defendant's estimate of the dispute's stakes controls unless the recovery is legally impossible. So we did some research on the question of what's legally possible or not and we found out that unless there's a legal certainty that the judgment for the plaintiff will be less than the jurisdictional amount, then you have to accept what the plaintiff says. And in this case, there are numerous cases actually, including a couple in this court, which say that if you pursued a claim, even if it was not a good claim and you lost on it, and it's instrumental and you're bringing the next case or the next claim, that's okay. It can be considered for purposes of the jurisdictional amount and for purposes of recovery of those amounts. Now I'm not saying he deserves it, because I don't think there's any merit to the case. Maybe we should get to that. I have a pretty discreet question, because the brief twice asks us to take judicial notice of matters that are not subject to judicial notice. And those are on pages 25 and 26. Is that my brief, Your Honor? Yeah. Under Federal Rule of Evidence 201, a court may judicially notice only a fact that it's not subject to reasonable dispute. And we've said that even court records may contain errors and are not necessarily subject to judicial notice. That's a pretty new case. That's Tobey v. Chaboukos at 890 F. 3rd, 634, 647 to 48, and it's a 2018 case. So if we do not take judicial notice, as you have urged on pages 25 and 26 of the response brief, how does your argument change? I don't really think it changes much at all. I think the focus here is who's the proper party to bring this kind of a claim. And the appellant is neither a purchaser, direct or indirect, a competitor, or a participant in the market. Every case requires at least one of those, and there is no such case in this situation in which this is being promoted. The trustee is a direct purchaser. It's the one who has the contract with BMS. And it has the financial incentive, because the trustee gets a percentage of the amount that's distributed on a sliding scale. And so if the trustee has that financial incentive, it also is being hurt if there is an antitrust violation. And it has the fiduciary duty to bring such a claim. So the trustee is the proper guardian under the Associated General Contractors case. That the trustee, and not the creditor, owns any prospective claim has been the law for more than 100 years. In Loeb versus Eastern Kodak, the Third Circuit decided that. And then that decision was that injury to a creditor of a corporation is too indirect, remote, and consequential to permit it to maintain an antitrust action. It found that after bankruptcy the only person that has that standing is the trustee. And this court in Southwest Suburban accepted that and also cited with approval the Loeb case. And it also cited with approval Associated General Contractors, which itself cited the Loeb case. So that's the law. And so what are we being asked to do here? Select this unexceptional case to make an exception to a more than century old rule? That seems wrong. Appellant here is basically saying, well, the trustee's not bringing the case, so let me bring it. Well, he had his opportunity to try to do that before the bankruptcy court, and they said no. The appellant doesn't agree with the decision not to sue, but that's not a sufficient reason. And in at least two cases, and I don't think, by the way, my adversary takes the position that Illinois BRIC doesn't apply. Well, Illinois BRIC does apply, even though it's centered on the direct purchaser rule, because if you look at Justice White's opinion in Illinois BRIC, basically he says, when in the Ninth Circuit case, the Western Liquid Asphalt cases, when they tried to carve out an exception to Hanover Shoe, and the court said, look, there are several asphalt purchasers who aren't purchasing here, and they're not suing. So let's make an exception. The court said, no, that was wrong. We shouldn't have done that. We shouldn't do that. And then again, Justice Kennedy, in the Kansas v. Utilicorp case, says that despite the fact that rationales of those cases, we're talking about Hanover Shoe and Illinois BRIC, may not apply with equal force in all instances, because the possibility of allowing an exception, even in rather meritorious circumstances, would undermine the rule and be imprudent. We shouldn't do it. And so there's another issue here that hasn't actually been brought up, and that is claim preclusion. Judge Lefkoe made decisions on concrete issues of McGarry not being a purchaser, not being a participant in the market, not being inextricably intertwined with any antitrust violation. As a result of that, in the first case, she should have ruled that he was collaterally estopped in bringing the second case. And if we go to the issue of the supposed merits of the claim, under Twombly, he just has not pleaded sufficient facts that support an antitrust claim. You have to plead facts that tend to exclude the possibility that the alleged conspirators acted independently. There's no who, what, when, where, or how. There was any communication between the plaintiff, the defendant, and its horizontal competitors. There was discussion with banks, because the banks were saying, we're going out of business. We're not going to stay in this business. We're not going to support the Chapter 7 trustees. We're not going to take their deposits anymore, because the system is broken. When the interest rates went down to near zero, there was no way to make any money for anybody. Not the banks, and not the software providers. So there had to be some kind of a way to figure out another system. And the EOUST invited BMS to present another way of doing it. And that's how that four-page memorandum called the White Paper was presented to the EOUST. And on the basis of that, the law was changed. And so, again, Nora Pennington, we were petitioning the government of the United States, and this is another basis for dismissing this case. Thank you, Your Honor. Thank you very much. Okay. Mr. Donegan? Let me try to make as many points as I can. The first is that with respect to subject matter jurisdiction, the controlling Supreme Court case is cited in the appendix to their brief State of Missouri 290 U.S. 199. It deals with the applicability of fees that were Their position seems to be the same as ours on the overall issue. Who is the proper party to bring the antitrust claim in a specific case? Now, their answer is the trustee. But in this case, the trustee has not only refused to do it, but what makes this case distinguishable from most other cases that you may see is that the trustee is precluded from doing it because the bankruptcy court has said this case cannot be reopened. It is too old. So the only potential plaintiff in this case is not the trustee, not the estate, but a creditor of the estate who is suing independently of the bankruptcy proceeding simply under the antitrust law because there is standing under the Supreme Court standard in AGC. And again, you may have mentioned this, but why did it become too old? The bankruptcy court said the case ended in 14. McGarry discovered it in There were documents cited in her complaint that predated 14. And apparently there is some suggestion that she should have scoured the public record in the United States to find the antitrust claim. Still wouldn't have worked. They're saying we don't even have a plausible claim with all this evidence. On top of that, the bankruptcy court held against us the fact that we took a year in the district court to try to bring the case in the first instance. I'm not sure whether that was determinative or not. But too much time had elapsed. No one can bring this case at this point. Trustee can't. Estate can't. McGarry is the only game in town. Mr. Herman spent a fair amount of time trying to explain to you that we're trying to create a new rule of is, in both situations, the infinite variety of claims that may arise make it virtually impossible to announce a black letter rule that will dictate the result in every case. So it's a matter of applying the six factors which are set forth in that case to determine whether or not McGarry has standing. Now, Mr. Herman is also attempting to raise the issue of whether or not the fact that there's a derivative issue, and he uses the Loeb case from the Third Circuit at the turn of the century to bolster his position. That case was very distinguishable. That involved, one, a pre-petition bankruptcy claim by the debtor, something that in the ordinary course you would expect to be resolved in the bankruptcy proceeding. On top of that, the debtor at that time, before the bankruptcy, was a for-profit corporation. There would have been serious issues of allocating the damage from the antitrust violation through to the shareholder who was actually suing in Loeb and Loeb. In this case, it's real easy. The money came out of the estate. If the money didn't come out of the estate as a result of the price-fixing violation, it would have gone to McGarry. That is a virtual certainty. So for those two reasons, the Loeb case is not on point. There is no case on point. It's a matter of applying the six AGC factors to the facts of this case. And unless the Court has more questions, I will sit down. Thank you very much. Thanks to both parties. And as always, we appreciate the arguments, and the case will be taken under